UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH RICHMOND,

               Petitioner,                              Case No. 01-10054
                                                    Honorable David M. Lawson

v.

PAUL RENICO,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Joseph Richmond, a state prisoner currently confined at the Macomb Correctional Facility in New Haven, Michigan, has filed a petition and supplemental memorandum for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is incarcerated in violation of his constitutional rights. At a jury trial in the Recorder's Court for the City of Detroit in 1996, the petitioner was convicted for first-degree felony murder, Mich. Comp. Laws § 750.316, armed robbery, Mich. Comp. Laws § 750.529, and conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a. He was sentenced to life imprisonment on the murder conviction, ten to twenty years imprisonment on the armed robbery conviction, and 191 days imprisonment (time served) on the conspiracy conviction. In his petition, Richmond contends that he was denied his right to a fair trial on account of prosecutorial misconduct, he was deprived of the effective assistance of counsel, and his right to due process of law was violated because there was insufficient evidence to support his conviction for felony murder. The respondent maintains that the petitioner's claims are procedurally defaulted or lack merit. The Court finds that the petitioner' prosecutorial misconduct and ineffective assistance of counsel claim are procedurally defaulted and he has not shown cause

for the default; the Court does not reach the merits of those claims. The Court concludes that the petitioner's insufficiency of evidence claim lacks merit. Therefore, the Court will deny the petition.

<div align="center">I.</div>

The petitioner's convictions arise from the fatal shooting of John Scott, Jr., also known as "Snoop," during a robbery set up by the petitioner. Evidence adduced at trial established that the petitioner planned the robbery, he recruited people to commit it, and Steve Eli was the shooter.

The facts established at trial were summarized by the trial court as follows when ruling on the petitioner's post-conviction motion for relief from judgment:

> Defendant's convictions stemmed from the 1995 murder of John Scott. The victim was killed by a single fatal shot to the head. The prosecution's main witness, an accomplice, Delrico Henley, plead[ed] guilty to second-degree murder and received a sentence of from 10 to 25 years imprisonment in exchange for his testimony. Prior to trial, Henley gave several conflicting statements of what happened the day in question, but began implicating defendant after the police told him he would not be charged as a defendant but instead would be a witness. Henley testified that defendant spearheaded and coordinated the robbery of two 1/8 kilo packages of cocaine which was to take place in connection with a drug deal. According to Henley, defendant wanted to pay off a $10,000.00 drug debt he owed to individuals in California. Henley claimed that the defendant wanted the robbery to look like a carjacking and assured him Scott would not be hurt. Henley testified that his role in the robbery was to hang out with Scott and keep defendant informed as to their whereabouts. Defendant explained that he would not be personally involved in the robbery because Scott would recognize him from a drug deal two days earlier. Subsequently, when the targets reached their vehicle a barrage of gunfire was unleashed upon them by three assailants, one of whom shot and killed Scott, dragged him from the car and left him lying in the street. Defense counsel did not object to this witness or his testimony and made no effort to interview him prior to trial.
>
> The prosecution then called Detroit Police Officer Bobby Gary, who had taken the second statement of Henley. He testified that he was "satisfied" with the second statement because "it fit the facts we had." Defense did not object.
>
> Another witness, Dennis Johnson, had also been charged with armed robbery, felony murder and conspiracy to commit armed robbery. However, on the day of trial, Johnson made an agreement to plead guilty to being an accessory after the fact and received one year in the county jail in exchange for testifying against defendant.

<div align="center">-2-</div>

Johnson testified that he had arranged the drug deal whereby Henley and Scott would sell to Tee. He further testified that after a conversation at the Crane house with Henley, defendant approached him to participate in the robbery. He claimed to have declined and defendant replied that he planned to "fuck him up". Defense did not object to this testimony.

On rebuttal, the prosecutor called Officer Felix Kirk, the officer in charge. He testified that the first statement Henley gave police didn't appear to be the truth based on what other witnesses said in their statements, but after comparing the second statement to the other evidence in the case he was satisfied. Defense did not object.

*People v. Richmond*, No. 96-004947 (3d Cir. Ct. Dec. 12, 2002).

There was a single defense witness, Vernell Lloyd, who previously had been tried and acquitted of the murder. He testified that he was in Troy, Michigan at the time of the murder and had no role in it. His testimony, therefore, was at odds with that of Henley.

On appeal to the Michigan Court of Appeals, the petitioner argued, among other things, that the prosecutor injected inadmissible evidence into the trial, referred to and argued on the basis of facts not in evidence, vouched for the credibility of his witnesses, engaged in improper cross-examination of the sole defense witness, and misstated the evidence during closing arguments. The underlying bases for these arguments were the prosecutor's cross-examination of Vernell Lloyd, his characterization of Delrico Henley's testimony, and his use of "bad acts" evidence. The petitioner also argued that defense counsel should have objected to the prosecutor's conduct and that the felony murder conviction should be reversed because there was no evidence of malice.

The Michigan Court of Appeals vacated the petitioner's armed robbery conviction on double jeopardy grounds but affirmed the murder and conspiracy convictions. *See People v. Richmond*, 1999 WL 33447028 (Mich. Ct. App. Apr. 16, 1999). The petitioner then appealed to the Michigan Supreme Court, which denied leave to appeal because it was "not persuaded that the questions

-3-

presented should be reviewed." *People v. Richmond*, 461 Mich. 951, 607 N.W.2d 725 (Mich. Sup.

Ct. Jan. 31, 2000).

On January 30, 2001, the petitioner filed his habeas corpus petition, stating as grounds for

relief:

I.     Petitioner was denied due process and his right to a fair trial as a result of highly prejudicial and pervasive prosecutorial misconduct where the prosecutor improperly vouched for the credibility of the State's witnesses and personally testified to critical extra-record statements under the guise of cross-examination.

II.    Defendant was denied the effective assistance of counsel where his trial counsel failed to object to highly prejudicial prosecutorial misconduct and further failed to investigate, interview or present crucial alibi witnesses.

III.   Petitioner was denied due process where there was insufficient evidence to support his conviction for felony murder.

In an order dated June 7, 2002, this Court determined that the petitioner had exhausted state

remedies for: (1) the portion of his first claim that attacks the prosecutor's cross-examination of

Vernell Lloyd and the related closing argument; (2) the portion of his second claim that challenges

defense counsel's failure to object to the prosecutor's cross-examination of Vernell Lloyd and the

related closing argument; and (3) his third claim regarding the sufficiency of the evidence. The

Court held that the petitioner did not exhaust state remedies for his claims that: (1) the prosecutor

bolstered Delrico Henley's testimony and vouched for Henley's credibility by soliciting two police

officers' opinions regarding Henley's truthfulness; (2) defense counsel should have objected to the

prosecutor's bolstering of and vouching for Henley through the police officers' testimony; and (3)

defense counsel failed to present alibi witnesses.

This Court concluded that the petitioner had not met his burden of proving exhaustion of

state remedies for all his claims and he had an available state remedy to exhaust. The Court then

held the case in abeyance to allow the petitioner to file a motion for relief from judgment in the state court.

The petitioner subsequently raised his unexhausted claims in a motion for relief from judgment. The trial court denied his motion, stating that the issues previously were adjudicated against the petitioner or that the petitioner had not established good cause for failing to raise new factual bases for his claims in an earlier proceeding. The petitioner appealed the trial court's decision, but both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Richmond*, No. 246281 (Mich. Ct. App. May 5, 2003); *People v. Richmond*, 469 Mich. 952, 670 N.W.2d 673 (2003).

The petitioner filed a supplemental memorandum in this Court on December 17, 2003. The memorandum urges the Court to consider the claims that the petitioner exhausted on collateral review in state court, along with the issues presented in the original habeas petition. The respondent asks the Court to deny the habeas petition on the grounds that the petitioner's claims are procedurally defaulted or without merit.

II.

The State's primary defense to the petitioner's first two grounds for relief is that the issues are procedurally defaulted, either because the petitioner failed to object to the offending prosecutorial conduct at trial, or because he failed to raise the issues on direct appeal and waited instead to file a motion for relief from judgment raising those issues. The Court will examine each of the claims in light of the Sixth Circuit's jurisprudence governing the issue of procedural default.

A procedural default in the habeas context is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The Sixth Circuit has stated that

> As a general rule, on *habeas* review, federal courts may not consider procedurally defaulted claims. *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000). A claim is procedurally defaulted if: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state courts actually enforced the procedural rule; and (3) the state courts' finding of noncompliance is an adequate and independent state ground for denying relief on the federal constitutional claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986).

*Cone v. Bell,* 359 F.3d 785, 789 (6th Cir. 2004), *rev'd on other grounds*, 543 U.S. 447 (2005) (per curiam).

Indeed, habeas relief may be precluded on claims for relief that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991). The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Application of the cause-and-prejudice bar may be avoided if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent*, 17 F.3d 155, 162 (6th Cir. 1994); *see Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from

-6-

which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim.  *Coleman*, 501 U.S. at 729-30.  Finally, the procedural default must rest on an "adequate and independent" state ground.  *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).  Whether the independent state ground is adequate to support the judgment is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

### A.

The petitioner's first habeas claim is based on allegations of prosecutorial misconduct.  The petitioner asserts that the prosecutor personally testified to critical extra-record statements under the guise of cross-examination and improperly vouched for the credibility of the State's key witness.

The improper cross-examination claim concerns the State's questioning of Vernell Lloyd, the sole defense witness.  The prosecutor asked Lloyd whether he had called Dennis Johnson on the night of the shooting and informed him that he and Steve Eli just shot John Scott, took Scott's vehicle – a Ford Bronco – and they were unable to find the drugs hidden in the Bronco.  The prosecutor also asked Lloyd whether he had informed Delrico Henley, while the two of them were confined in jail, that the petitioner was waiting around the corner so that Lloyd and Steve Eli could return their guns to him.  Finally, the prosecutor asked Lloyd whether he had informed Henley that he and Steve Eli or the petitioner drove John Scott's Ford Bronco down Sheridan Street to the inner city substation and paid a "crack head" to torch the Bronco.  Llyod denied all of these accusations.

The petitioner contends that these questions amounted to testimony on facts not in evidence.  According to the petitioner, there was no evidence that Vernell Lloyd and Steve Eli returned their guns to the petitioner who was waiting nearby or that he and the petitioner drove the Bronco to the inner city substation and burned it.

-7-

In addition, the petitioner posits that the prosecutor impermissibly affirmed Delrico Henley's credibility by arguing these "facts" as though they had been introduced as evidence. The prosecutor implied in his rebuttal argument that Vernell Lloyd was not credible because he denied telling Delrico Henley that Steve Eli shot John Scott, that he gave the guns back to the petitioner, and that he and the petitioner took Scott's vehicle to the inner city substation, removed the drugs, and burned the car.

The State argues that these claims were not preserved because the petitioner did not object to the testimony or argument at trial, thereby violating the contemporaneous objection rule. In this case, it appears that a state procedural rule was in place during the relevant time, namely that a defendant must object at trial to instances of prosecutorial misconduct. *Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir. 2003). The rule requires defendants to preserve constitutional and nonconstitutional issues for appellate review by making an objection in the trial court. *See People v. Carines*, 460 Mich. 750, 761-64, 597 N.W.2d 130, 137-38 (1999); *People v. Grant*, 445 Mich. 535, 546, 520 N.W.2d 123, 128 (1994). Although Michigan state courts "frequently waive the contemporaneous objection rule when they perceive the issue to have significant constitutional import," the contemporaneous objection rule was firmly established with respect to claims of prosecutorial misconduct at the time of the petitioner's trial. *Bentley v. Bock*, 239 F. Supp. 2d 686, 693-94 (E.D. Mich. 2002). Therefore, the contemporaneous objection rule with respect to claims of prosecutorial misconduct is an adequate and independent state ground on which to deny relief. *See ibid*.

The petitioner violated this rule by not objecting to the prosecutor's cross-examination of Vernell Lloyd and related rebuttal argument on the ground that the prosecutor was testifying or

relying on facts not in evidence.  The Michigan Court of Appeals enforced the contemporaneous-objection rule by stating that appellate review was precluded because the petitioner failed to object to any of the alleged instances of prosecutorial misconduct.  The procedural rule was an adequate and independent ground for denying relief because it was firmly established and regularly followed before the petitioner's 1996 trial, *see, e.g., Grant*, 445 Mich. at 535 (decided in 1994), and because the state court actually relied on it.

Because it appears that the petitioner has procedurally defaulted these prosecutorial misconduct claims, the remaining question is whether the petitioner has demonstrated "cause" for the failure to adhere to the procedure in place, and "prejudice" that flows from the application of the rule.  *See Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006).  Ineffective assistance of counsel, as alleged here by the petitioner, may serve as "cause" for a procedural default if it rises to the level of a constitutional violation.  *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002).  In fact, a "claim of ineffective assistance of counsel . . . can serve as both cause and prejudice, excusing a procedural default in an underlying substantive claim."  *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel.  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  An attorney's performance is deficient if counsel's representation falls below an "objective standard of reasonableness."  *Id*. at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.  The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

1.

The petitioner alleges that his trial lawyer's performance was deficient because he failed to object to the questions and argument on the ground that there was no evidence that Vernell Lloyd told Delrico Henley that he or Steven Eli gave a gun to the petitioner after the robbery.  However, as the Michigan Court of Appeals correctly noted, Henley testified on cross-examination by defense counsel that, in a statement he gave to the police, he mentioned something about the petitioner being in a car on Field Street.  When defense counsel asked whether Henley had said in his statement that Vernell Lloyd gave the guns to the petitioner, Henley responded that he thought he had said that Steve Eli gave him the guns.  Defense counsel then asked, "Well, . . . would it surprise you if you said, if your statement had Stevie and Vern gave him the guns they had, that your statement had that in there?"  Tr. Nov. 20, 1996, at 85.  Henley answered, "No, it wouldn't surprise me.  It would have been somebody gave him the gun." *Ibid.*  Henley later testified that somebody had told him who gave the guns to whom.

-10-

Because Henley's responses were not struck from the record, they provided  some evidence that the petitioner was waiting in a car after the robbery and that either Steve Eli or Vernell Lloyd gave him the guns used in the robbery.  Consequently, the prosecutor was not testifying when he subsequently cross-examined Vernell Lloyd about whether he and Steve Eli returned guns to the petitioner, and his related comments during closing arguments were not improper.  It follows that defense counsel's failure to object to the alleged misconduct was not deficient performance because the grounds on which he was supposed to object, according to the petitioner, were not borne out by the record.

<div align="center">2.</div>

The petitioner alleges that the prosecutor testified and introduced facts not in evidence when he asked Vernell Lloyd whether he had told Delrico Henley that he (Lloyd) and either Steve Eli or the petitioner drove John Scott's Bronco to the inner city substation and paid a "crack head" to incinerate it.  Additionally, notes the petitioner, the prosecutor made the following comments in his rebuttal argument:

> Vern Lloyd wants you to believe that he had nothing to do with this.  Even though, and he claims that an alleged conversation that took place between him and Delrico Henley never existed.  But yet [he] has no explanation for how Delrico Henley knew to tell the police in these statements that the car was found near the inner city substation right where the police officers told you it was.  Burned out just like the police officers told you it was.

Tr. Nov. 21, 1996, at 78.

A police officer had testified that, on the day after the shooting, he found the victim's charred vehicle near the inner city substation.  However, there was  no evidence that Vernell Lloyd  and either Steve Eli or the petitioner drove the vehicle to the inner city substation and paid someone to set it on fire.

<div align="center">-11-</div>

Even assuming that defense counsel should have objected to the prosecutor's cross-examination and related rebuttal argument, the petitioner has not shown that the alleged deficiency prejudiced the defense. He stands convicted of felony murder and conspiracy to commit armed robbery. There was considerable other evidence that the petitioner conspired to commit a robbery and aided and abetted the murder. Furthermore, the prosecutor's questions and comments about driving the victim's vehicle to the inner city and paying someone to burn it do not implicate the petitioner in the actual murder or conspiracy. The jury could have believed from the prosecutor's questions and comments that the petitioner was an accessory after the fact. In addition, the questioning did not impermissibly undermine Vernell Lloyd's credibility. The prosecutor had a good-faith basis for asking the questions, and Lloyd was at liberty to agree or dispute the premises of the questions. Defense counsel's failure to object did not constitute deficient performance and, even if it did, the deficient performance did not prejudice the defense.

* * * * * * *

The Michigan Court of Appeals concluded that defense counsel's failure to object to the prosecutor's conduct was not ineffective assistance of counsel. This Court agrees. The petitioner has failed to show that his trial attorney's performance was deficient and that the failure of his trial counsel to object would have led to a different result. Therefore, the petitioner cannot meet the *Strickland* standard. Having failed to demonstrate that defense counsel provided ineffective assistance, the petitioner cannot show cause to excuse the procedural bar that precludes habeas review of his prosecutorial-misconduct claim. *Hinkle v. Randle*, 271 F.3d 239, 246 (6th Cir. 2001).

The Court need not determine if the petitioner has demonstrated the requisite prejudice because he has not shown "cause." *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Willis*, 351 F.3d 741

-12-

at 746.  Therefore, the remaining question is whether the Court's failure to consider the substantive merits of the petitioner's defaulted claim will result in a miscarriage of justice.

This narrow exception to the cause and prejudice rule requires the petitioner to demonstrate that the alleged constitutional error has probably resulted in the conviction of one who is actually innocent of the substantive offense.  *Dretke v. Haley*, 541 U.S. 386, 388-89 (2004).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  To be credible, a claim of actual innocence requires the petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Id*. at 324.

The petitioner purports to be innocent, and he claims to have eyewitness testimony to support his claim of actual innocence.  The new evidence consists of four affidavits from the petitioner's relatives.  Three of the four affiants claim that the petitioner was present at his grandmother's home on September 22, 1995, the day of the murder, from midday or early afternoon until at least 11:00 p.m.  However, these affidavits do not rule out the possibility that the petitioner conspired to rob John Scott earlier that day, as Delrico Henley testified, or that the petitioner aided and abetted others in committing the murder.

The remaining affidavit, signed by James Lloyd, states that Mr. Lloyd lives at the house on Crane Street where the petitioner allegedly discussed robbing John Scott.  Mr. Lloyd states that he was home all day on the day of the shooting and that he did not observe the petitioner at his house.

-13-

Mr. Lloyd's affidavit also states that he did hear Delrico Henley and Dennis Johnson discuss a plan to rob John Scott.

The Lloyd affidavit does not amount to new, reliable evidence of innocence. The petitioner could have been present at the house on Crane Street even if Mr. Lloyd did not see him there, because Delrico Henley testified that he met with the petitioner there but Henley was present for only three to five minutes. Significantly, Henley also testified that before going to the house on Crane Street, he discussed the robbery with the petitioner on a street corner.

Furthermore, the supporting affidavits are dated January 29, 2001, long after the petitioner's trial in November of 1996. Long-delayed affidavits that vouch for the petitioner and blame someone else, must "be treated with a fair degree of skepticism." *See Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring). "In the new trial context, motions based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Id.* at 417.

The delay in producing the affidavits and their failure to rule out the possibility that the petitioner committed the crimes even if he was at his grandmother's home on the day of the shooting lead the Court to conclude that the petitioner has failed to establish "that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Schlup*, 513 U.S. at 327. Therefore, a miscarriage of justice will not occur from this Court's failure to adjudicate the substantive merits of the petitioner's claim. Because the petitioner's claim is procedurally defaulted, and because he has not demonstrated "cause and prejudice" or a miscarriage of justice, the Court will not review on the merits the claim of prosecutorial misconduct based on questions and argument concerning defense witness Vernell Lloyd.

-14-

B.

The respondent contends that the petitioner's remaining claim about the prosecutor and the petitioner's second habeas claim regarding defense counsel also are procedurally defaulted because the petitioner could have but failed to raise these claims on direct appeal in the state court. Although the petitioner raised these claims in his motion for relief from judgment, the relevant state procedural rule is Michigan Court Rule 6.508(D)(3), which "governs the procedures for collateral appeals and denies relief if the defendant alleges claims that could have been raised in the direct appeal from the conviction." *Caver v. Straub,* 349 F.3d 340, 346 (6th Cir. 2003). The Rule reads in relevant part:

> (D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
> . . . .
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
> (b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D) (effective October 1, 1989).

The petitioner violated this rule by not asserting his remaining claims, with the exception of his sufficiency-of-the evidence claim, on direct appeal. The trial court, court of appeals, and state supreme court enforced the procedural rule by stating that the petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). The reference to Rule 6.508(D) was a sufficient explanation for this Court to conclude that the state courts based their decisions on a procedural default. *Burroughs v. Makowski*, 282 F.3d 410, 413-414 (6th Cir. 2002); *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Rule 6.508(D) was an adequate and independent state ground for denying leave to appeal because it was firmly established and regularly followed before the petitioner's conviction became

-15-

final, *see Simpson*, 238 F.3d at 407 (explaining that "MCR 6.508(D) was being regularly followed as of 1990"), and because the state courts actually relied on the rule. Therefore, in order for this Court to consider the merits of the petitioner's claims, he must establish "cause and prejudice" or a miscarriage of justice. The petitioner alleges that the ineffective assistance of his first appellate attorney was "cause" for not raising the claims on direct appeal. As mentioned above, ineffective assistance of counsel can be sufficient to satisfy the cause requirement. *See Murray*, 477 U.S. at 488. However, to establish constitutionally ineffective assistance of counsel, the petitioner has to show that his appellate attorney's performance was deficient and that the deficient performance prejudiced his appeal. *Strickland*, 466 U.S. at 687; *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999); *see also Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006).

An appellate attorney need not raise every nonfrivolous argument on appeal. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (citing *Jones*). "Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Murray*, 477 U.S. at 536 (quoting *Jones*, 463 U.S. at 751-52). When an appellate attorney presents one argument on appeal rather than another, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2002)). When ignored issues are clearly stronger than those presented, the presumption of effective assistance of appellate counsel is overcome. *Joshua*, 341 F.3d at 441. A petitioner is prejudiced by appellate counsel's deficient performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal. With these considerations in mind, the

-16-

Court will examine the petitioner's underlying claims regarding the prosecutor and trial counsel to determine if appellate counsel should have raised the claims on direct review.

1.

The petitioner alleges that the prosecutor vouched for the credibility of Delrico Henley through responses elicited from police officers Bobby Gary and Felix Kirk. Officer Gary took Henley's second pretrial statement in which Henley said that the petitioner planned the robbery. The prosecutor asked Officer Gary whether he was satisfied with Delrico Henley's first statement to another officer and Henry's second statement to Officer Gary. Officer Gary responded that he was not satisfied with Henley's first statement, but that he was satisfied with the second statement because it matched information the police had from other witnesses who had seen parts of the robbery. The prosecutor elicited similar testimony from Officer Kirk, whom the prosecutor called as a rebuttal witness.

The petitioner contends that this testimony improperly bolstered Henley's credibility because it was based on evidence outside the record. The petitioner argues that his trial hinged on the credibility of Delrico Henley and that his appellate attorney should have raised the prosecutor's questioning of Officers Gary and Kirk as a factual basis for his claim of prosecutorial vouching.

The Court does not believe that the omitted claim was clearly stronger than the claim raised because Delrico Henley's testimony about the petitioner was corroborated in part by Dennis Johnson. Johnson testified that on September 22, 1995, the petitioner met with Henley at a house on Crane Street. After the meeting, the petitioner informed Johnson that they were planning to rob John Scott, and he asked Johnson whether he wanted to participate in the robbery. The petitioner

-17-

and his cousins said that they did not like Scott and that they planned to "fuck him up."  Tr. Nov. 20, 1996 at 149.

Therefore, even if the prosecutor had not elicited testimony from police officers that they believed Henley's second statement, which apparently was consistent with Henley's trial testimony, there was another basis for believing Henley:  Dennis Johnson's testimony.  The Court concludes that the prosecutor's conduct in relation to Officers Gary and Kirk was harmless and, therefore, appellate counsel's failure to raise the petitioner's claim on direct appeal was not deficient performance.

<div align="center">2.</div>

Next, the petitioner alleges that his trial attorney should have objected to the prosecutor's questions regarding Officer Gary's and Officer Kirk's opinions on the truthfulness of Delrico Henley's statement to Officer Gary.   As previously explained, however, Dennis Johnson corroborated Delrico Henley's testimony about the petitioner.  Therefore, trial counsel's failure to object to the prosecutor's conduct did not prejudice the defense, and appellate counsel's failure to attack trial counsel's performance was not ineffective assistance.

<div align="center">3.</div>

The petitioner's only other claim about defense counsel is that he failed to present alibi witnesses.  According to the petitioner, defense counsel chose to attack Delrico Henley's credibility rather than rely on an alibi defense.

Failure to call a known alibi witness generally constitutes ineffective assistance of counsel. *Bigelow v. Williams*, 367 F.3d 562, 569 (6th Cir. 2004).   The petitioner, however, has not demonstrated that he had a strong alibi defense.  As discussed above, the affidavits submitted in

<div align="center">-18-</div>

support of his current claims do not account for all the petitioner's actions on the day of the shooting. Nor do they rule out the possibility that the petitioner agreed with other people to rob John Scott and that he aided and abetted Scott's murder without the affiants' knowledge. Therefore, although defense counsel may have been ineffective for failing to assert an alibi defense, appellate counsel was not ineffective for failing to attack trial counsel's choice of strategy because there was no demonstrable prejudice flowing from the inadequate performance.

<div align="center">* * * * * * *</div>

The Court concludes for all the reasons given above that appellate counsel's performance was not deficient and did not prejudice the appeal. Because appellate counsel was not ineffective, the petitioner cannot rely on ineffective assistance of appellate counsel as "cause" to excuse his noncompliance with Rule 6.508(D).

The Court need not determine if the petitioner has demonstrated the requisite prejudice because he has not established cause to excuse his procedural default. *Willis*, 351 F.3d at 746. And, as previously explained, the petitioner has not met the requirement for showing a miscarriage of justice. Accordingly, the petitioner's claims about defense counsel and the prosecutor's questioning of two police officers are procedurally defaulted. The Court will not review the substantive merits of those claims.

<div align="center">III.</div>

The third and final habeas claim alleges that there was insufficient evidence produced at trial to support the petitioner's felony murder conviction. The Michigan Court of Appeals adjudicated

<div align="center">-19-</div>

this claim on the merits and concluded that there was sufficient evidence from which rational jurors could conclude beyond a reasonable doubt that the petitioner aided and abetted Steve Eli in killing John Scott during the planned robbery of Scott's truck and drugs.  The petitioner alleges that the state court's determination of the facts and application of federal law were unreasonable.

Although the crime in this case occurred in 1995, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petitioner filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  That Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520-21

-20-

(quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) ( internal quotes omitted)).  Additionally, this

Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1)

("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court, a determination of a factual issue made by a State court

shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating

that "[t]he court gives complete deference to state court findings of historical fact unless they are

clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the governing
> law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established
> precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case."  *Id.* at 409.  The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable. . . .

> [A]n *unreasonable* application of federal law is different from an *incorrect*
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that court

> concludes in its independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly.  Rather, that application
> must also be unreasonable.

*Id.* at 409, 410-11.  *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408

F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v.*

*Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

The Supreme Court has stated that "the Due Process Clause protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  After *Winship*, the

critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a
> reasonable doubt.  But this inquiry does not require a court to 'ask itself whether *it*
> believes that the evidence at the trial established guilt beyond a reasonable doubt.'
> Instead, the relevant question is whether, after viewing the evidence in the light most
> favorable to the prosecution, *any* rational trier of fact could have found the essential
> elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (citations and footnote omitted) (emphasis in

original).

The *Jackson* standard "must be applied with explicit reference to the substantive elements

of the criminal offense as defined by state law," *id*. at 324 n.16, and through the framework of 28

U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  "A reviewing court does

not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been

observed by the trial court."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing

*Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "Furthermore, 'circumstantial evidence alone,

if substantial and competent, may support a verdict and need not remove every reasonable

hypothesis except that of guilt.'"  *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003) (quoting

*United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999)).  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim."  *Matthews*, 319 F.3d at 788-89.

The elements of felony murder in Michigan are:

> (1) [t]he killing of a human being (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result (3) *while committing, attempting to commit, or assisting in the commission* of any of the felonies specifically enumerated in MCL 750.316; MSA 28.548.

*People v. Thew*, 201 Mich. App. 78, 85, 506 N.W.2d 547, 550 (1993) (quoting *People v. Bush*, 187 Mich. App. 316, 327, 466 N.W.2d 736, 741 (1991)).  Robbery is a felony enumerated in the statute. *See* Mich. Comp. Laws § 750.316(1)(b).

Michigan law does not distinguish between principals and those aiding them in the commission of crime with respect to the degree of culpability, and any person involved in a crime, "whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission" is "prosecuted" and "punished as if he had directly committed such offense." Mich. Comp. Laws § 767.39; *People v. Mangiapane*, 219 Mich. 62, 65-66, 188 N.W. 401,402 (1922) (commenting that the "statute has abolished the distinction between accessories before the fact and principals. . . .  Now all are principals, and the guilt of one does not depend upon the guilt of the other").

Aiding and abetting encompasses "all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which may support, encourage or incite the commission of a crime." *People v. Vicuna,* 141 Mich. App 486, 495, 367 N.W.2d 887, 891 (1985), *disapproved of on other grounds by People v. Dalessandro*, 165 Mich. App. 569, 419 N. W. 2d 609 (1988).  "The aider and abettor's 'specific intent or his knowledge of the principal's specific intent may be inferred

-23-

from circumstantial evidence.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Eggleston*, 149 Mich. App. 665, 668, 386 N.W. 2d 637, 639 (1986)).

The prosecutor's theory in this case was that the petitioner was guilty either as a principal or as an aider and abettor. To convict a defendant of felony murder as an aider and abettor under Michigan law, the prosecution must prove that

> (1) the crime charged was committed by defendant or some other person, (2) defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that he gave aid and encouragement. An aider and abettor must have the same requisite intent as that required of a principal. Thus, "'the prosecutor must show that the aider and abettor had the intent to commit not only the underlying felony, but also to kill or to cause great bodily harm, or had wantonly and wilfully disregarded the likelihood of the natural tendency of this behavior to cause death or great bodily harm.'"

*People v. Akins*, 259 Mich. App. 545, 554-55, 675 N.W.2d 863, 873 (2003) (quoting *People v. Tanner*, 255 Mich. App. 369, 418- 419, 660 N.W.2d 746 (2003)). The petitioner claims that the prosecutor failed to produce sufficient evidence of the third element: malice. The Court disagrees.

"A defendant's malice, sometimes described as acting in wanton and wilful disregard of the possibility that death or great bodily harm would result, can be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Bulls*, 262 Mich. App. 618, 626, 687 N.W.2d 159, 164-65 (2004) (internal citation, quotation marks, and footnote omitted). Malice also can be inferred from the use of a deadly weapon. *Id.* at 627.

The record indicates that John Scott died from a gunshot wound to the head. The gun was fired at close range, and the manner of death was homicide.

Delrico Henley testified that he was present when the petitioner planned to rob John Scott. The petitioner had said that Scott's vehicle would be taken and that the robbery would look like a

-24-

carjacking.  The petitioner also said that Vernell Lloyd and Steve Eli would commit the robbery and that Scott would not be shot or hurt.

Henley further testified that he was present when Steve Eli shot John Scott during the robbery.  Henley did not see the actually shooting; nor did he see Eli's gun.  However, he heard a gunshot, and when he looked up he saw Eli pulling John Scott's body out of his vehicle and laying him in the street.  He knew Eli had a gun.  Henley was informed that the petitioner was sitting in a car and that somebody gave the petitioner the gun.

Dennis Johnson testified that the petitioner asked him if he wanted to take part in the robbery.  According to Johnson, the petitioner and his cousins said that they did not like John Scott and that they intended to "fuck him up." Tr. Nov. 20, 1996 at 148-50.

The facts that the petitioner intended to fake a carjacking, recruited Steve Eli who was known to possess a gun, and said Scott would not be shot suggests that the petitioner knew a gun would be used during the crime.  And the fact that the petitioner and his cousins allegedly said that they intended on "fucking up" Scott suggests that the petitioner intended some type of harm to come to Scott.  A rational juror could have concluded that the petitioner aided and abetted others in creating a high risk of great bodily harm knowing that great bodily harm was the likely result.  At a minimum, the evidence adduced at trial demonstrated that the petitioner set in motion a force likely to cause great bodily harm or that he wantonly and wilfully disregarded the likelihood that his behavior would cause great bodily harm.  Therefore, the state court's conclusion that the evidence was sufficient did not result in a decision that was an unreasonable determination of the facts or an unreasonable application of *Jackson*.

IV.

-25-

The petitioner has not proved that he is in custody in violation of the Constitution or laws of the United States.  The Court concludes that the petitioner is not entitled to habeas relief on the claims contained in his petition.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  January 29, 2007

<div style="border:1px solid black; background-color:#cccccc;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 29, 2007

s/Felicia M. Moses
FELICIA M. MOSES

</div>